UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SPECTRUM HEALTH,

    Plaintiff,

v.                                        Case No. 1:07-CV-1091

VALLEY TRUCK PARTS and THE             HON. GORDON J. QUIST
VALLEY TRUCK PARTS HEALTH
BENEFIT PLAN,

    Defendants.
_____/

## OPINION

Plaintiff, Spectrum Health ("Spectrum"), filed its complaint in this action in the Kent County Circuit Court on or about October 2, 2007, against Defendants, Valley Truck Parts ("Valley Truck") and the Valley Truck Parts Health Benefit Plan (the "Plan"), alleging a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, to recover benefits from the Plan as reimbursement for medical treatment that Spectrum provided to Mark Clark, a Valley Truck employee and a participant in the Plan. Spectrum also asserted claims under ERISA for statutory penalties for failure to comply with ERISA requirements, as well as attorney fees. Finally, Spectrum alleged state law claims for breach of contract, account stated, and quantum meruit/unjust enrichment. Defendants removed the case to this Court on October 31, 2007, based upon federal question jurisdiction over the ERISA claims.

Presently before the Court is Defendants' motion for entry of judgment for failure to exhaust administrative remedies. For the reasons set forth below, the Court will deny the motion.

## Background

Valley Truck sponsors and administers the Plan, a self-funded employee welfare benefit plan governed by ERISA that provides health benefits to Valley Truck employees. SecureOne

Benefits Administrators, Inc. ("SecureOne") serves as the Plan's third party administrator, also referred to as the claim administrator..

The Plan provides that an employee becomes eligible for coverage on the first day of employment – also considered the enrollment date – subject to a 90-day waiting period that commences on the first day of employment. (Summary Plan Description ("SPD") at 2, 42, Administrative Record ("A.R.") Ex. 2.) The Plan does not provide coverage for a pre-existing condition unless the employee has been covered under the Plan for 12 consecutive months (or 18 months for a late enrollee). (SPD at 25.) The term "pre-existing condition" is defined as follows:

> [A] condition for which medical advice, diagnosis, care or treatment was recommended or received within 6 months of the person's Enrollment Date. . . . Treatment includes receiving services and supplies, consultations, diagnostic tests or prescribed medicines. In order to be taken into account, the medical advice, diagnosis, care or treatment must have been recommended by, or received from, a Physician.

(SPD at 26.) The 12 or 18-month period may be reduced if the employee has creditable coverage from a previous employer. (*Id.* at 25.)

The Plan also provides a procedure for the submission and review of claims. With regard to claims submitted after the service has been rendered, the Plan provides that the Administrator, i.e., SecureOne, must notify the claimant of any denial within 30 days after receipt of the claim. This period is subject to a one-time extension of up to 15 days if the Administrator determines that an extension is necessary and notifies the claimant within the initial 30-day period of the circumstances necessitating an extension and the date by which a decision is expected. If the Administrator requires information from the claimant, the claimant will be granted a 45-day extension to submit the specified information. (SPD at 48.) If the Administrator denies the claim, the Plan must provide a notice of the denial that: (1) sets forth the reason(s) for the adverse determination; (2) refers to the Plan provisions supporting the determination; (3) describes any

2

additional information that may be necessary for the claimant to perfect the claim; (4) describes the Plan's review procedures and time limits; and (5) notifies the claimant of his or her right to bring an action pursuant to ERISA following an adverse benefit determination on appeal. (SPD at 49.) These requirements are consistent with and track both ERISA and the applicable Department of Labor regulations. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(f)(2)(iii)(B), (g).

The Plan also provides a two-level procedure for appealing an adverse determination. A claimant who seeks to appeal an adverse determination must file a written appeal within 180 days following the denial of the claim. (SPD at 49.) The claimant is entitled to copies of all documents, records, or other information that was considered, submitted, or generated in connection with the benefit determination. The appeal determination must be made without deference to the original decision to deny the claim and must be made by an appropriate named fiduciary under the Plan who is neither the person who made the initial determination or the first appeal determination nor a subordinate of those persons. (*Id.*) The administrator must notify the claimant of the decision on the appeal within 30 days after receipt of the request for the initial appeal, or 30 days after receipt of the request for the second appeal, if the claimant requests a second appeal. (SPD at 50.) These provisions also track the applicable regulations. *See* 29 C.F.R. § 2560.503-1(h)((3), (i)(2)(iii).

Mark Clark was hired by Valley Truck on March 14, 2005, and became enrolled in the Plan as of that date. Clark was covered under the Plan as of July 1, 2005. On October 25, 2005, Spectrum performed a heart catheterization on Clark upon the recommendation of Clark's cardiologist, Dr. Tejinder Mander of West Michigan Cardiology. Prior to performing the procedure, Spectrum obtained preauthorization from SecureOne in order to confirm that Clark was covered under the Plan and to comply with the Plan's pre-authorization requirements, although the SecureOne representative informed the Spectrum representative that the Plan's pre-existing condition limitation may apply.

On or about November 11, 2005, Spectrum electronically billed SecureOne $31,752.30 for the services it provided to Clark. In response, SecureOne issued an Explanation of Benefits ("EOB") form to Spectrum on November 15, 2005, stating that the claim was "[p]ending" for "further review." In fact, SecureOne was attempting to determine whether the services Spectrum provided to Clark were for a pre-existing condition and, therefore, not covered under the Plan. In response to SecureOne's request for information concerning the treatment rendered to Clark, Dr. Mander's office initially indicated that Clark had not been referred to that office by another doctor. Subsequently, in reviewing the claim, Sue Bronson, SecureOne's Vice President of Claims, determined that it was unlikely that Clark would have seen Dr. Mander, a cardiologist, without a referral. She therefore contacted Dr. Mander's office and learned that Thomas Cox, a physician's assistant at the White Pine Family Medicine Clinic in Cedar Springs, Michigan, had referred Clark to Dr. Mander.

Upon learning of the referral, Bronson sent the White Pine Clinic a request for information pertaining to Clark's treatment. SecureOne received various medical records from the White Pine Clinic in mid-January 2006. Those records showed that Mr. Cox saw Clark on several occasions in September 2004 for complaints of chest pain. On January 17, 2006, SecureOne sent Spectrum an EOB stating that the claim was still "[p]ending" for "further review." On January 20, 2006, Bronson noted in the activity log that based upon the records furnished by the White Pine Clinic, Clark had a pre-existing heart condition that the Plan would not cover unless Clark had some creditable prior coverage. On January 24, 2006, SecureOne sent Spectrum an EOB denying its claim because Spectrum's bill related to a "[p]re-existing condition" and "plan limitations applied."

Between January 2006 and January 2007, both Clark and Spectrum representatives contacted SecureOne on various occasions about Spectrum's bill. For example, on March 30, 2006, Clark informed SecureOne that in 2004 he was seen for chest pain relating to pneumonia and not for his

4

heart or anything related to his heart. In June of 2006, a Spectrum representative inquired about the status of SecureOne's review of additional records from the White Pine Clinic. On June 29, 2006, SecureOne's representative orally informed Spectrum in a voice mail that the new records would not change the pre-existing condition determination. In November 2006, the White Pine Clinic informed SecureOne that it would be submitting additional records to SecureOne regarding Clark's prior treatment. Finally, in January and February 2007, Spectrum representatives inquired about the basis for the denial and requested an explanation of how the pre-existing condition limitation applied to Clark's situation.[1]

On February 8, 2007, Spectrum sent an appeal letter to SecureOne, in which it contested SecureOne's determination that the pre-existing condition limitation applied to the services that Spectrum rendered to Clark.[2] On May 18, 2007, SecureOne sent a letter authored by Bronson to Spectrum, apparently responding to Spectrum's February 8, 2007, appeal letter and affirming the prior denial.

By letter dated June 18, 2007, Spectrum's counsel notified SecureOne that the May 17, 2007, letter denying the appeal failed to comply with ERISA's notice requirements as set forth in 29 C.F.R. § 2560.503-1(g)(i), (ii), (iii), and (iv). Spectrum's counsel requested information pertaining to the calculation of Clark's six-month pre-existing condition period under the Plan; "creditable

---

[1] In one of the telephone conversations, the Spectrum representative pointed out to SecureOne that SecureOne paid other bills pertaining to Clark's treatment, including those submitted by Dr. Mander, without asserting that the pre-existing condition limitation applied, even though such payments were inconsistent with the treatment of Spectrum's claim. This continues to be a point of contention between the parties. Spectrum suggests that SecureOne's payment of the other bills undermines Defendants' argument that Clark was treated for a pre-existing condition, while Defendants contend that SecureOne paid Dr. Mander's bills and the lab bills only because Dr. Mander's office initially provided inaccurate information and SecureOne would have denied those claims had it known that Dr. Mander actually saw Clark based upon a referral. Because the Court is concerned only with the exhaustion issue at this point, it need not determine whether SecureOne's payment of the other claims actually supports Spectrum's position.

[2] The parties offer differing interpretations of the circumstances surrounding Spectrum's filing of its written appeal. Spectrum says that SecureOne "requested" the written appeal, while Defendants contend that SecureOne merely told Spectrum to put its questions in writing without considering the letter an appeal. For purposes of the instant motion, it matters not whether SecureOne "requested" the appeal or even considered Spectrum's letter to constitute an appeal.

coverage" that Clark might have had; and the specific references in Clark's medical records supporting SecureOne's determination that the treatment Clark received in September 2004 was directly related to the condition for which Spectrum rendered treatment. Spectrum's counsel also requested copies of records and documents that SecureOne considered or relied upon in making its adverse determination. SecureOne forwarded the letter to Valley Truck and its counsel, and on August 10, 2007, Valley Truck's Human Resource Representative sent a letter to Spectrum's counsel. In that letter, Valley Truck took the position that Spectrum's appeal was untimely because the EOB issued on January 24, 2006, constituted the official denial by the Plan and Spectrum failed to file a written appeal within the 180-day appeal period. Valley Truck further maintained that the appeal was invalid because there was no proof that Spectrum was authorized to pursue the claim on behalf of Clark. However, Valley Truck reiterated SecureOne's prior conclusion that the pre-existing condition limitation precluded coverage for Spectrum's services.

On August 16, 2007, Spectrum's counsel wrote to Valley Truck following a telephone conversation. Along with the letter, Spectrum's counsel provided an assignment of benefits executed by Clark, as well as an authorization for release of medical information. The letter also set forth Spectrum's reasons supporting its assertion that the Plan's decision to deny benefits was improper. When Valley Truck failed to respond, Spectrum filed the instant suit.

## Discussion

Defendants contend that the Court should dismiss Spectrum's claim because Spectrum failed to exhaust the administrative review process provided by the Plan. In particular, Defendants assert that the January 24, 2006, EOB was the Plan's formal denial and Spectrum failed to file a written appeal of the adverse determination within 180 days from the issuance of the EOB, as required by the Plan. Thus, according to Defendants, Spectrum is barred from seeking benefits because it failed to timely and properly exhaust. In a somewhat related argument, Defendants assert that Spectrum

6

neither had a right to pursue an appeal of adverse benefit determination, nor to file this case, because Spectrum did not obtain a valid assignment from Clark of his rights under the Plan.

The Court first addresses Defendants' contention that Spectrum lacks authority to assert Clark's rights under the Plan. Defendants contend that the document entitled "Assignment of Benefits, Claims and Rights to Receive Documents," dated December 12, 2007, which Spectrum produced for the first time after this litigation was filed, did not give Spectrum authority to pursue Clark's rights prior to the date Spectrum received that assignment. Defendants thus argue that Spectrum cannot maintain its claims here because it never had authority to pursue a claim through the administrative process in the first instance.

Defendants' argument must be rejected. Defendants do not assert, and the Court has not found based upon its review of the SPD, that the Plan contains a provision precluding or otherwise limiting a participant's or beneficiary's assignment of rights under the Plan. ERISA does not, itself, prohibit the assignment of health care benefits, *see Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 06-0462 (JAG), 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007), and the Plan contains no limitation on, or requirements for, a valid assignment of benefits. As part of its August 16, 2007, letter to Valley Truck, Spectrum, through its counsel, provided Valley Truck with a copy of a document entitled "General Consent for Treatment and Release of Information" that Clark signed on October 25, 2005.[3] (Supplemental Administrative Rec., as Submitted by Pl., Ex. D-1.) Paragraph 8 of that document provides:

> I authorize Spectrum Health to file and pursue a claim for payment of my Spectrum Health charges with my insurance carrier as specified now or requested later. I further assign insurance benefits payable to me to Spectrum Health and or the physician indicated on the claim form. . . .

---

[3] Although Defendants contend that the additional documents submitted by Spectrum are not part of the administrative record and should not be considered by the Court, the Court finds no reason to exclude those documents from consideration, at least for purposes of the instant motion.

7

This language of assignment is sufficient to authorize Spectrum to pursue a claim for benefits for the provided services from the Plan, either for itself or on Clark's behalf. Defendants did not object to Spectrum's asserted authorization/assignment at the time Spectrum furnished it to Valley Truck, nor do they even address it in their briefs. Moreover, as Spectrum correctly notes, the regulations provide that a plan's claim procedures may not "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." 29 C.F.R. § 2650.503-1(b)(4). Thus, Spectrum may properly assert a claim for benefits due Clark pursuant to the Plan.[4]

The central issue in the instant motion is exhaustion. "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). "[T]he exhaustion requirement enables plan fiduciaries to 'efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991) (quoting *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989)). The exhaustion requirement "is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000). Additionally, the fact that a plan makes administrative review permissive does not excuse a claimant from availing himself or herself of the review process before filing a federal suit. *Baxter*, 941 F.2d at 454. However,

---

[4] Even if the Court were to conclude that Spectrum did not obtain a valid assignment from Clark, the Court would nonetheless conclude that Defendants are estopped from raising the issue of Spectrum's right or authorization to pursue a claim for payment of benefits. *Cf. Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992) (holding that a plan was estopped to assert an anti-assignment clause against a provider where the plan continued to deal with the provider without asserting the clause and first asserted it more than three years after the beneficiary died and after the provider filed suit). Here, SecureOne dealt with Spectrum for well over a year and a half without asserting that Spectrum lacked authority. While Valley Truck did assert the issue in its August 10, 2007, letter to Spectrum's counsel, Valley Truck never responded to the form that Spectrum provided as proof of assignment and authorization.

exceptions to the exhaustion requirement "include futility of the administrative process and inadequacy of the administrative remedy." *Id.* at 453 (citing *Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990)). "[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion." *Id.*

Defendants' argument that Spectrum failed to exhaust because it did not file a written appeal within the 180-day period following the adverse benefit determination set forth in the January 24, 2006, EOB assumes that the EOB complied with the requirements of both ERISA and the Plan and constituted a proper notice of an adverse benefit determination. As set forth above, ERISA, the applicable regulations, and the Plan all contain specific requirements governing the contents of a notice of an adverse benefits determination as well as the timing for such a determination. The Court concludes that the EOB failed to comply with the notice requirements and that the Plan failed to issue a timely determination on the claim.

With regard to the notice requirement, the Sixth Circuit employs a "substantial compliance" test, in which a court must examine all of the communications between the claimant and the administrator to determine the extent to which the purposes of the notice requirement have been fulfilled. *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). "[I]t is crucial for [the court] to determine whether the plan administrators fulfilled the essential purpose of § 503 – notifying [the claimant] of their reasons for denying [its] claims and affording [it] a fair opportunity for review." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 460 (6th Cir. 2003). In this case, while it may be debatable whether SecureOne, the administrator, informed Spectrum of the specific reasons for its denial of the claim, there is no dispute, as Defendants must concede, that the EOB did not afford Spectrum a reasonable opportunity for a full and fair review. That is, the EOB did not explain the Plan's review procedures and applicable time limits, including the 180-day appeal period, nor did it inform the recipient of the right to bring an action under ERISA for review of the

9

denial of benefits. *See* 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(g)(iv). As a consequence of the EOB failing to comply with ERISA's notice requirements, the 180-day appeal period was never triggered.

Apart from failing to provide the required information, the administrator failed to make a timely benefit determination. Under both the Plan and applicable regulations, the administrator had 30 days after receipt of the claim within which to make a determination. Spectrum submitted its claim to SecureOne on or about November 11, 2005, but SecureOne did not issue the purported final decision denying benefits until January 24, 2006, more than 30 days later

Defendants contend that although the January 24, 2006, EOB did not comply with ERISA's notice requirements, the Plan afforded a reasonable claims procedure because during the six-month appeal period following the issuance of the EOB, SecureOne gave Spectrum and Clark every opportunity to establish that Clark had not been treated for a pre-existing condition because it responded to all communications from Spectrum and Clark. It is unclear whether Defendants assert that Spectrum's questions and SecureOne's answers conveyed by telephone amounted to an appeal by Spectrum. If so, exhaustion would not be an issue. But in any event, the fact remains that SecureOne never advised Spectrum of the 180-day appeal period, nor did it provide anything in writing during the 180-day period that could constitute a proper written notice of denial of an appeal.

Regarding the timeliness of the claim denial, Defendants note that SecureOne issued an EOB on November 15, 2005 – less than a week after it received Spectrum's claim. Defendants further note that both the Plan and ERISA regulations allow an extension of time if a claimant has failed to supply information that is necessary for a decision on the claim. The problem with this argument, of course, is that the November 15, 2005, EOB failed to comply with both the Plan and ERISA regulations for a proper extension of time. The Plan states:

> If such an extension is necessary due to the failure of the claimant to submit the information necessary to decide the claim, the notice of extension shall describe the required information and the claimant will be granted 45 days from the receipt of the notice within which to provide the information.

(SPD at 48); *see also* 29 C.F.R. § 2560.503-1(f)(2)(iii(B). The EOB merely stated that the claim was "[p]ending" for "further review." It did not specify any information to be provided by Spectrum or Clark, nor did it describe specifically what information the administrator deemed necessary to its decision.[5]

Having concluded that the administrator failed to follow the Plan's procedures, thereby denying Spectrum a full and fair review of its claim, the Court must decide whether to review the claim itself or remand it to the Plan administrator. Defendants contend that the Court should dismiss the action without prejudice to allow Spectrum the opportunity to pursue its administrative remedies. However, Sixth Circuit precedent suggests that the proper remedy for a plan administrator's violation of ERISA's procedural violations is to have the district court review the claim rather than remanding it to the administrator for further review. *See VanderKlok v. Provident Life & Acc. Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992). There, the court stated:

> The failure to follow administrative review procedures was Provident's not plaintiff's. Therefore, we do not believe it is necessary to require that plaintiff first submit additional evidence to Provident before bringing an appeal before the district court. We agree with plaintiff that the appropriate remedy is to remand to the district court with instructions to reconsider the issue of disability after plaintiff has been given the opportunity to submit additional evidence.

*Id.* The Court notes that some Sixth Circuit cases purporting to follow *VanderKlok* have indicated that a district court may either decide the claim without remanding or choose to remand to the plan

---

[5] The Court further notes that even if Spectrum had filed its written appeal within the 180-day period, SecureOne would have still failed to provide an appropriate review because Bronson, who wrote the May 17, 2007, response denying Spectrum's February 8, 2007, written appeal, was the same person who reviewed and denied the original claim. As noted above, the Plan and ERISA regulations require that the person assigned to review the appeal must not be the same person who made the initial adverse benefit determination.

11

administrator.  *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005) (citing *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 461 (6th Cir. 2003)).  In a more recent case, *University Hospitals of Cleveland v. South Lorain Merchants Association Health & Welfare Benefit Plan and Trust*, 441 F.3d 430 (6th Cir. 2006), the court, without even acknowledging *McCartha* or *Marks*, chastised the district court for remanding the case to the plan administrator instead of conducting the review itself, contrary to *VanderKlok*

Although this Court believes that *VanderKlok* provides the appropriate disposition, even if this Court has discretion to remand the case to the administrator, the Court believes that given the substantial procedural failings by the plan administrator, it is appropriate for this Court to review the claim.  This result is also consistent with the ERISA regulations, which provide that if a plan administrator fails to follow claims procedures consistent with the requirements of the regulations, the claimant will be deemed to have exhausted its administrative remedies and may pursue his remedies under ERISA in court.  29 C.F.R. § 2560.503-1(l); *see also Soltysiak v. UNUM Provident Corp.*, 531 F. Supp. 2d 816, 818 (W.D. Mich. 2008).

## Conclusion

For the foregoing reasons, the Court will deny Defendants' motion for entry of judgment for failure to exhaust administrative remedies.

An Order consistent with this Opinion will be entered.


Dated:  May 30, 2008                                   /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE