UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SPECTRUM HEALTH,

    Plaintiff,

v.                                                                              Case No. 1:07-CV-1091

VALLEY TRUCK PARTS and THE                          HON. GORDON J. QUIST
VALLEY TRUCK PARTS HEALTH
BENEFIT PLAN,

    Defendants.
_____/

## **OPINION**

Plaintiff, Spectrum Health ("Spectrum"), has sued Defendants, Valley Truck Parts ("Valley Truck") and the Valley Truck Parts Health Benefit Plan (the "Plan"), alleging a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, to recover benefits from the Plan as reimbursement for medical treatment that Spectrum provided to Mark Clark, a Valley Truck employee and a participant in the Plan.[1] Pursuant to the Court's June 4, 2008, Order, the parties have filed cross motions for entry of judgment based upon the administrative record pursuant to the procedure set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), for determining ERISA denial of benefits claims. For the reasons set forth below, the Court will grant Spectrum's motion, deny Defendants' motion, and reverse the decision denying Spectrum's claim for benefits from the Plan.

---

[1] As noted in the Court's May 30, 2008, Opinion disposing of Defendants' motion for entry of judgment for failure to exhaust administrative remedies, Spectrum originally filed this case in state court and Defendants removed it to this Court on the basis of federal question jurisdiction over the ERISA claim. Spectrum also alleged various state law claims. It is not clear whether Spectrum has abandoned the state law claims or whether they are still at issue. In any event, the instant motion concerns only the ERISA claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

**Background**

The Court has issued a previous opinion (docket no. 29) in this case addressing Defendants' motion to dismiss based upon Spectrum's asserted failure to exhaust its administrative remedies. The Court concluded, among other things, that Defendants failed to comply with the requirements of both ERISA and the Plan in denying Spectrum's claim and that Spectrum, therefore, should be deemed to have properly exhausted its administrative remedies. In conducting its analysis, the Court set forth a detailed recitation of the facts surrounding the claim. Because familiarity with that decision is assumed, it is unnecessary to repeat those facts in detail, so the Court will simply summarize the relevant facts, except as may otherwise be necessary to the analysis.

The Plan is an ERISA-qualified plan that provides health benefits to Valley Truck employees. Valley Truck sponsors, funds, and administers the Plan, and SecureOne Benefits Administrators, Inc. ("SecureOne") serves as the Plan's third-party or claim administrator.

The Plan excludes coverage of pre-existing conditions unless the employee has been covered under the Plan for 12 consecutive months (or 18 months for a late enrollee). (Summary Plan Description ("SPD") at 25, Administrative Record ("A.R.") Ex. 2.) The term "pre-existing condition" is defined as follows:

> [A] condition for which medical advice, diagnosis, care or treatment was recommended or received within 6 months of the person's Enrollment Date. . . . Treatment includes receiving services and supplies, consultations, diagnostic tests or prescribed medicines. In order to be taken into account, the medical advice, diagnosis, care or treatment must have been recommended by, or received from, a Physician.

(SPD at 26.) The 12 or 18-month period may be reduced if the employee has creditable coverage from a previous employer. (*Id.* at 25.)

Mark Clark was hired by Valley Truck on March 14, 2005, and became enrolled in the Plan as of that date. Clark was covered under the Plan as of July 1, 2005. In October 2005, Dr. Tejinder

Mander, a cardiologist with West Michigan Cardiology, saw Clark for a cardiovascular evaluation, upon a referral by Tom Cox, a physician's assistant at the White Pine Family Medicine Clinic in Cedar Springs, Michigan.  In his letter to Mr. Clark summarizing his findings, Dr. Mander noted that Clark had "a strong history of coronary artery disease." (Letter from Mander to Clark of 10/14/05, at 1, A.R. Ex. 16.)  He advised that a "stress echocardiogram showed inferior wall akinesis after exercise, and the posterior wall became severely hypokinetic." (*Id.* at 2.)  Dr. Mander recommended that Clark undergo a heart catheterization to "enlighten us to his definitive coronary anatomy." (*Id.*)

On October 25, 2005, Spectrum performed a heart catheterization on Clark, including stenting of the right coronary artery and a coronary angioplasty.  Spectrum obtained preauthorization from SecureOne in order to confirm that Clark was covered under the Plan and to comply with the Plan's pre-authorization requirements, although the SecureOne representative informed the Spectrum representative that the Plan's pre-existing condition limitation may apply.

On or about November 11, 2005, Spectrum billed SecureOne $31,752.30 for its services to Clark.[2]  Because the claim exceeded a certain amount, it was received by Sue Bronson, SecureOne's Vice President of Claims.  Dr. Mander's office initially informed SecureOne that Clark had not been referred by another doctor, but Bronson determined that it was unlikely that Dr. Mander would have seen Clark without a referral.  In a follow up inquiry, Dr. Mander's office advised Bronson that Mr. Cox had referred Clark for treatment.

In mid-January 2006, SecureOne received various medical records from the White Pine Clinic which showed that Mr. Cox saw Clark on several occasions in September 2004 for complaints of chest pain.  On January 24, 2006, SecureOne sent Spectrum an Explanation Of Benefits ("EOB") form denying Spectrum's claim because the bill related to a "[p]re-existing condition" and "plan limitations applied."

---

[2]Spectrum now concedes that under the Plan it is entitled to only 85% of the amount of its claim, or $26,989.46. (Pl.'s Br. Supp. Mot. for J. on the Admin. R. at 7 n.4.)

For approximately a year following SecureOne's initial denial, Spectrum continued to inquire about the claim and the application of the pre-existing condition limitation to Clark's situation. Also, during that time, SecureOne reviewed additional records from the White Pine Clinic. However, SecureOne maintained its position that the pre-existing condition exclusion applied to Spectrum's claim.

On February 8, 2007, Spectrum sent an appeal letter to SecureOne. On May 17, 2007, SecureOne sent a letter authored by Bronson to Spectrum, apparently responding to Spectrum's February 8, 2007, appeal letter and affirming the prior denial. On June 18, 2007, Spectrum's counsel notified SecureOne by letter that the May 17, 2007, denial letter, among other things, failed to comply with ERISA's notice requirements as set forth in 29 C.F.R. § 2560.503-1(g)(i), (ii), (iii), and (iv). SecureOne forwarded the letter to Valley Truck and its counsel, and on August 10, 2007, Valley Truck's Human Resource Representative sent a letter to Spectrum's counsel. In that letter, Valley Truck took the position that Spectrum's appeal was untimely because the EOB issued on January 24, 2006, constituted the official denial by the Plan and Spectrum failed to file a written appeal within the 180-day appeal period. Valley Truck further maintained that the appeal was invalid because there was no proof that Spectrum was authorized to pursue the claim on behalf of Clark. Nonetheless, Valley Truck addressed Spectrum's claim on the merits and denied the claim on the grounds that the pre-existing condition limitation barred Spectrum's services.

Spectrum filed the instant case after Valley Truck refused to change its decision denying the claim.

## Discussion

In its previous opinion issued on May 30, 2008, the Court rejected Defendants' arguments that Spectrum lacked authority to file a claim on behalf of Clark and that Spectrum failed to timely and properly exhaust its administrative remedies under the Plan. In connection with the exhaustion

4

issue, the Court found that SecureOne, acting on behalf of Valley Truck and the Plan, failed to comply with both ERISA's and the Plan's notice requirements and failed to issue a timely determination of Spectrum's claim, thus precluding any argument that Spectrum failed to properly exhaust.  Finally, the Court concluded that it should review the claim itself rather than remanding to the Plan administrator, as Defendants had suggested.

The issues thus remaining with regard to Spectrum's claim for benefits are:  (1) the standard by which the Court must review Valley Truck's denial of benefits; and (2) whether the treatment Mr. Cox rendered to Clark in the fall of 2004 invokes the Plan's pre-existing condition exclusion.

*Standard of Review*

A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).  The *de novo* standard of review applies to both the factual determinations and legal conclusions of the plan administrator.  *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious" standard. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991).  The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)); *see also Miller v. Metropolitan Life Ins. Co.*, 925

5

F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if they are 'rational in light of the plan's provisions'") (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)).  In applying this standard, the Court must defer to the administrator's interpretation when the plan vests the administrator with discretion to interpret the plan; an administrator's determination will be overturned only upon a showing of internal inconsistency in the plan or bad faith. *Davis*, 887 F.2d at 695.  While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez*, 150 F.3d at 555 (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1993) (italics and alteration in original)).  Moreover, a court may not "merely . . . rubber stamp the administrator's decision," but must actually "exercise [its] review powers." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

Defendants argue, and Spectrum appears to concede, that the Plan contains language sufficiently clear to authorize Valley Truck to administer and construe the Plan's terms and conditions and decide issues of eligibility.  The particular language states:

> The Plan Administrator shall administer this Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures.  It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Covered Person's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.  The decisions of the Plan Administrator will be final and binding on all interested parties.

(SPD at 55.)  This language is sufficient to cloak Valley Truck with the discretionary authority to construe the Plan as required to invoke the arbitrary and capricious standard of review.

Spectrum argues that in spite of the language granting the Plan administrator discretionary authority, the Court should review Valley Truck's determination *de novo*.  First, it contends that

6

Defendants' failure to comply with Plan requirements and ERISA regulations while reviewing and denying Spectrum's claim transforms the Court's review from arbitrary and capricious to *de novo*. Second, citing the Court's statement in its May 30, 2008, Opinion that in denying Spectrum's appeal, "Valley Truck reiterated SecureOne's prior conclusion that the pre-existing condition limitation precluded coverage for Spectrum's services," Spectrum contends that the *de novo* standard applies because Valley Truck failed to conduct an independent review of the claim as required by the Plan and ERISA regulations.

The Court rejects Spectrum's arguments for the following reasons. First, the cases Spectrum cites for the proposition that Defendants' failure to follow Plan procedures and ERISA regulations requires the denial to be reviewed *de novo* – *Nichols v. Prudential Insurance Co.*, 406 F.3d 98 (2d Cir. 2005), *Jebian v. Hewlett Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098 (9th Cir. 2003), and *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003) – are distinguishable from this case. At issue in those cases was a previous version of the Department of Labor ERISA regulation that provided, "[i]f the decision on review is not furnished within [the permitted] time, the claim shall be deemed denied on review." 29 C.F.R. § 2560.503-1(h)(4) (1999). In each case, the plan administrator failed to issue a decision on the claimant's appeal within the time provided by the regulation, and the claimant filed suit before the administrator issued a decision because the claim was "deemed denied." Those courts held that in such circumstances a court should review the benefit determination under a *de novo* standard because, even if the plan grants discretionary authority to decide a claim, a denial resulting from inaction as opposed to a reasoned decision is not a valid exercise of discretion which a court can review under an arbitrary and capricious standard. *See Nichols*, 406 F.3d at 109; *Jebian*, 349 F.3d at 1103; *Gilbertson*, 328 F.3d at 631-33. This case is different because the Department of Labor amended the ERISA regulation in 2000 to omit the "deemed denied" language. *See Jebian*, 349

7

F.3d at 1103 n.5 (mentioning the omission of the "deemed denied" language in the amended regulation). Instead, a plan administrator's failure to issue a decision on an appeal prior to the regulatory deadline under the now-applicable version of the regulation results in the claim being deemed exhausted rather than denied, thus entitling the claimant to file a civil action under ERISA. *See* 29 C.F.R. § 2560.503-1(l); *Hardt v. Reliance Standard Life Ins. Co.*, 494 F. Supp. 2d 391, 393-94 (E.D. Va. 2007). Whether omission of the "deemed denied" provision from the regulation undercuts the rationale expressed in *Nichols*, *Jebian*, and *Gilbertson* is an open issue. *See Sluimer v. Verity, Inc.*, No. C 08-01220 SI, 2008 WL 289914, at *4 n.2 (N.D. Cal. July 22, 2008); *Hardt*, 494 F. Supp. 2d at 394. Apart from the applicable regulation, however, this case is different because Spectrum waited for a decision from the plan administrator before filing suit, thus providing an actual decision for this Court to review.³ Second, in at least one decision, the Sixth Circuit stated a rule contrary to that of the Second, Ninth, and Tenth Circuits, when it said, "the standard of review is no different whether the appeal is actually denied or is deemed denied." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). Of course, in a subsequent decision, the Sixth Circuit acknowledged *Daniel* but also recognized the "undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000). However, *Daniel* still appears to be good law, and other Sixth Circuit cases have said that a plan administrator's violations of a claimant's procedural rights, as occurred in this case, provide no basis for changing the standard of review. *See Univ. Hosps. of Cleveland v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 434 (6th Cir. 2006) ("*VanderKlok* [*v. Provident Life & Accident*

---

³In light of this decision by Valley Truck, the Court rejects Spectrum's argument that Valley Truck did not conduct an independent review of the denial. While it is true that Valley Truck reiterated SecureOne's conclusion that the pre-existing condition limitation applied to Clark's treatment, the record shows that Valley Truck did in fact perform its own review and even added other grounds for denying the claim (which this Court has already determined to be meritless).

8

*Insurance Co.*, 956 F.2d 610, 615 (6th Cir. 1992)] does not suggest that changing the standard of review . . . is the proper means of remedying a violation of a claimant's procedural rights."). Finally, because Valley Truck's decision cannot withstand scrutiny even under the more deferential standard, as explained below, application of the *de novo* standard would not change the result.[4]

### *Denial of Benefits*

Spectrum offers several reasons why Valley Truck's decision that the pre-existing condition exclusion precludes Spectrum's claim was arbitrary and capricious. However, the Court need look no further than the language of the Plan to determine that Valley Truck improperly concluded that the pre-existing condition limitation applies.

As noted above, the Plan defines "pre-existing condition" as a condition for which the covered person received "medical advice, diagnosis, care or treatment," but only if "the medical advice, diagnosis, care or treatment [was] recommended by, or received from, a Physician." (SPD at 26.) It is undisputed that the "medical advice, diagnosis, care or treatment," which Valley Truck contends triggers the pre-existing condition exclusion was rendered by Tom Cox, who was a physician's assistant, not a physician. Recognizing this limitation, Defendants argue that care or treatment rendered by a physician's assistant is, for all intents and purposes, care and treatment rendered by a physician because the Michigan Public Health Code provides that a physician's assistant may provide medical care or services only under the direct supervision of a physician. *See* M.C.L. § 333.17076. Defendants further point out that Mr. Cox was supervised by a physician at the Cedar Springs Clinic, Dr. Jeffrey Williamson.

The problem with Defendants' argument is that the applicable Plan language states that the care or services must be "recommended by, or received from, *a Physician*," not by or from someone

---

[4]For the same reason, Valley Truck's readily-apparent conflict of interest as both the decision-maker and payer of benefits, *see Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998), does not factor into the Court's decision.

9

acting *under the supervision of a physician*. Moreover, there is no evidence in the record that a physician was actually involved in rendering medical care or treatment to Clark when he visited the White Pine Clinic in September 2004. While Valley Truck, as the Plan administrator, has substantial discretion to interpret Plan provisions, such discretion does not permit Valley Truck to expand the scope of coverage limitations or exclusions. *See Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 564 (6th Cir. 2007) (finding the plan administrator's application of one plan's eligibility requirements to other plans "absent any text that even remotely supports such a conclusion" was arbitrary and capricious); *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) ("Discretion to interpret a plan . . . does not include the authority to add eligibility requirements to the plan.").

Even if the term "physician" could somehow be considered ambiguous with respect to whether it also includes a physician's assistant (which is a stretch), resort to the Plan's definition section would quickly resolve any ambiguity:

> **Physician** means a legally qualified person who is practicing within the scope of his license and holding a degree of Doctor of Medicine (M.D.), Doctor of Osteopathy (D.O.), Doctor of Dental Surgery (D.D.S.), Doctor of Podiatric Medicine (D.P.M.), or Doctor of Chiropractic (D.C.). The term Physician shall also be extended to include Doctor of Psychology (Ph.D.), Registered Physical Therapist (R.P.T.), Licensed Speech Therapist (L.S.T.), Credentialed Addictions Counselor, Orthoptic Technician, and Licensed Clinical Social Worker (L.C.S.W.), provided they are licensed in the political jurisdiction where practicing. A person who is entitled by virtue of state licensing requirements, holds the title of MSW or Limited Licensed Psychologist, and is operating under the direct supervision of an MD or PhD. For purposes of the treatment of substance abuse, the term "Physician" also includes a credentialed addiction counselor.

(SPD at 45.) The Plan definition of "Physician" goes to great lengths to describe which physical and mental health providers are included under the term "Physician." While the definition does include a person "operating under the direct supervision of an MD or PhD," such person must also "hold[] the title of MSW or Limited Licensed Psychologist." Nowhere does the definition refer to a

10

physician's assistant or PA. Thus, Valley Truck's decision that the treatment by Mr. Cox – a physician's assistant – sufficed to meet the requirements of the pre-existing condition exclusion was arbitrary and capricious.

## Conclusion

For the foregoing reasons, the Court will grant Spectrum's motion, deny Defendants' motion, and reverse the decision of Valley Truck denying Spectrum's claim for benefits.

An Order consistent with this Opinion will be entered.


Dated:  September 8, 2008                                                                                                        /s/ Gordon J. Quist
                                                                                                         GORDON J. QUIST
                                                                    UNITED STATES DISTRICT JUDGE